# IN THE UNITED STATES DISTRICT COURT FOR THE
# EASTERN DISTRICT OF OKLAHOMA

VERNON R. CLOUD,                )
                                )
            Plaintiff,           )
                                )
v.                              )   Case No. CIV-10-303-RAW
                                )
MICHAEL J. ASTRUE,              )
Commissioner of Social          )
Security Administration,        )
                                )
            Defendant.          )

## REPORT AND RECOMMENDATION

Plaintiff Vernon R. Cloud (the "Claimant") requests judicial review of the decision of the Commissioner of the Social Security Administration (the "Commissioner") denying Claimant's application for disability benefits under the Social Security Act. Claimant appeals the decision of the Administrative Law Judge ("ALJ") and asserts that the Commissioner erred because the ALJ incorrectly determined that Claimant was not disabled. For the reasons discussed below, it is the recommendation of the undersigned that the Commissioner's decision be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment. . ." 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social

Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . ." 42 U.S.C. §423(d)(2)(A). Social Security regulations implement a five-step sequential process to evaluate a disability claim. *See,* 20 C.F.R. §§ 404.1520, 416.920.[1]

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g). This Court's review is limited to two inquiries: first, whether the decision was supported by

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity, as defined by 20 C.F.R. §§ 404.1510, 416.910. Step two requires that the claimant establish that he has a medically severe impairment or combination of impairments that significantly limit his ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921. If the claimant is engaged in substantial gainful activity (step one) or if the claimant's impairment is not medically severe (step two), disability benefits are denied. At step three, the claimant's impairment is compared with certain impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. A claimant suffering from a listed impairment or impairments "medically equivalent" to a listed impairment is determined to be disabled without further inquiry. If not, the evaluation proceeds to step four, where claimant must establish that he does not retain the residual functional capacity ("RFC") to perform his past relevant work. If the claimant's step four burden is met, the burden shifts to the Commissioner to establish at step five that work exists in significant numbers in the national economy which the claimant – taking into account his age, education, work experience, and RFC – can perform. Disability benefits are denied if the Commissioner shows that the impairment which precluded the performance of past relevant work does not preclude alternative work. *See generally,* Williams v. Bowen, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence; and, second, whether the correct legal standards were applied. Hawkins v. Chater, 113 F.3d 1162, 1164 (10th Cir. 1997)(citation omitted). The term "substantial evidence" has been interpreted by the United States Supreme Court to require "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). The court may not re-weigh the evidence nor substitute its discretion for that of the agency. Casias v. Secretary of Health & Human Servs., 933 F.2d 799, 800 (10th Cir. 1991). Nevertheless, the court must review the record as a whole, and the "substantiality of the evidence must take into account whatever in the record fairly detracts from its weight." Universal Camera Corp. v. NLRB, 340 U.S. 474, 488 (1951); see also, Casias, 933 F.2d at 800-01.

### Claimant's Background

Claimant was born on April 24, 1962 and was 47 years old at the time of the ALJ's decision. Claimant completed his education through the tenth grade but later obtained his GED and attended vocational school. Claimant has worked in the past as an industrial maintenance person, laborer, and automobile

mechanic/parts puller. Claimant alleges an inability to work beginning May 13, 2008 due to limitations resulting from depression, back problems, legal blindness in his left eye, and limited vision in his right eye.

**Procedural History**

On May 13, 2008, Claimant protectively filed for supplemental security income pursuant to Title XVI (42 U.S.C. § 1381, *et seq.*) of the Social Security Act. Claimant's application was denied initially and upon reconsideration. On June 4, 2009, an administrative hearing was held before ALJ Larry D. Shepherd in Fort Smith, Arkansas. On November 17, 2009, the ALJ issued an unfavorable decision on Claimant's application. On June 24, 2010, the Appeals Council denied review of the ALJ's decision. As a result, the decision of the ALJ represents the Commissioner's final decision for purposes of further appeal. 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He determined that while Claimant suffered from severe impairments, he did not meet a listing and retained the residual functional capacity ("RFC") to perform a full range of light work.

**Errors Alleged for Review**

Claimant asserts the ALJ committed error in: (1) posing improper hypothetical questions to the vocational expert resulting in flawed testimony upon which the ALJ relied; (2) relying upon evidence from an agency physician alone in arriving at an RFC assessment; and (3) engaged in a faulty credibility analysis.

**Hypothetical Questioning of the Vocational Expert**

At a young age, Claimant lost his left eye in a pellet gun accident and remains blind in that eye. At age 13, Claimant's hand was cut off and reattached, limiting his ability to grasp. (Tr. 21).

On June 9, 2008, Claimant underwent a mental health evaluation by Dr. Kathleen M. Kralik. Dr. Kralik concluded at Axis I: Pain Disorder Associated with Boh Psychological Factors and a General Medical Condition, Cannabis Abuse, Mood Disorder NOS, PTSD, Chronic; Axis II: Deferred; Axis V: GAF of between 55 and 65. (Tr. 229-30). Claimant reported that he had difficulty sleeping, experienced paranoia, was easily overwhelmed, used to have suicidal tendencies and anger issues, experienced depression, and difficulties focusing. (Tr. 225-27).

On June 24, 2008, Claimant was diagnosed with chronic low back pain, untreated depression, and unilateral blindness in the left

eye. (Tr. 257).

On June 9, 2008, Claimant received a medical imaging consultation by Dr. Ismail Ihmeidan. The lumbar vertebral body heights and alignment were normal. The disc space intervals were preserved. Lateral osteophyte at the L2-3 interspace but no posterior osteophytic changes were noted. No significant radiographic abnormality was seen. (Tr. 290).

In his decision, the ALJ found Claimant suffered from the severe impairments of degenerative disc disease, mood disorder, and legal blindness of the left eye. (Tr. 46). He determined Claimant could perform a full range of light work, except that he can occasionally climb, balance, stoop, kneel, crouch, and crawl. He can perform work that does not require binocular vision or high far visual acuity. Claimant was found to be able to understand, remember, and carry out simple, routine and repetitive tasks and can have occasional contact with coworkers and the general public. (Tr. 48).

In the ALJ's hypothetical questioning to the vocational expert ("VE"), he inquired as to work available to an individual that "does not require binocular vision." The VE inquired as to the meaning of binocular vision. The ALJ defined the term as "vision that doesn't require vision in both eyes." The VE stated he could

6

take that limitation into consideration "[g]iven adequate vision to handle, grasp, hold and turn objects at the light level on a satisfactory basis. . . ." He testified that light unskilled occupations of bottling line attendant, conveyer line bakery worker, toy assembly, motel cleaners, hand packers to include shoe packer. (Tr. 35-36).

The VE was then asked if he added to the hypothetical that "the individual can perform work that does not require high far visual acuity," would the individual be able to perform the same jobs. The VE stated this additional limitation would not impact the ability to perform occupations identified. (Tr. 37).

A vocational expert's testimony can provide a proper basis for an ALJ's determination where the claimant's impairments are reflected adequately in the hypothetical inquiries to the expert. Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir. 1993). The ALJ is required to accept and include in the hypothetical question only those limitations supported by the record. Shepherd v. Apfel, 184 F.3d 1196, 1203 (10th Cir. 1999). Undoubtedly, the ALJ's use of the term "binocular vision" was confusing and not a term often used in the *Dictionary of Occupational Titles* ("DOT"). Indeed, occupations which require depth perception defined in the DOT refer to the necessity for "three-dimensional vision" which includes the

"[a]bility to judge distances and special relationships so as to see objects where and as they actually are." *Selected Characteristics of Occupations Defined in the Revised Dictionary of Occupational Titles*, App. C-4. The jobs of bottling line attendant and shoe packer require frequent use of depth perception which would eliminate these jobs for one with Claimant's vision limitations. The remaining job identified by the VE of motel cleaner, however, does not require visual acuity or depth perception. The ALJ is only required to identify one or more occupations with a significant number of available positions. 20 C.F.R. § 404.1566(b); Evans v. Chater, 55 F.3d 530, 532 (10th Cir. 1995). The motel cleaner position is identified to have 3,792 jobs regionally and 431,391 nationally. The ALJ, therefore, satisfied his step five responsibility by identifying one job which meets Claimant's limitations.

**RFC Assessment**

Claimant also challenges the ALJ's RFC evaluation, contending that he improperly relied upon DDS consultants. The ALJ determined that "[t]he DDS physical residual functional capacity assessments are consistent with an ability to perform the exertional requirements of light work." (Tr. 49). Claimant first contends the consultants lack credentials. While it is true the two

8

consultants are not identified as physicians, nothing in the record indicates the consultants are unqualified. DDS consultant Alice M. Davidson found Claimant could occasionally lift and/or carry 20 pounds, frequently lift and/or carry 10 pounds, stand and/or walk about 6 hours in an 8 hour workday, sit for about 6 hours in an 8 hour workday, push and/or pull without limitation. (Tr. 274). DDS consultant Bill F. Payne affirmed the assessment. (Tr. 285).

Moreover, the ALJ also relied upon the consultative examination report of Dr. Van Hoang. (Tr. 50). Dr. Hoang found normal range of motion in all respects. (Tr. 255). Claimant had a negative straight leg raising test, no muscle atrophy, and no weakness or sensory abnormalities. (Tr. 256). Claimant was found to have normal grip strength. Id.

Additionally, the opinion of Dr. Kralik reflected in the consultative psychological examination of June 9, 2008 was noted by the ALJ. (Tr. 50). The totality of these records support the ALJ's RFC assessment. No error will be attributed to the ALJ's findings in this regard.

### Credibility Analysis

The ALJ determined that Claimant's testimony regarding limitations on daily activities and pain were not wholly credible. (Tr. 48-51). Although Claimant alleged back pain, nothing in the

9

medical record supported these subjective complaints. The report of Dr. Hoang and x-rays indicated no abnormalities which would give rise to Claimant's pain claims. (Tr. 253-57). The same can be said of Claimant's allegations of debilitating mental conditions. The report of Dr. Kralik did not support such limitations. (Tr. 229-30). Moreover, Dr. Kralik stated she suspected Claimant was malingering and prone to exaggeration on some of his claims. (Tr. 227, 231). Claimant also testified as to his daily activities, performing personal needs, cooking, cleaning, laundry, household repairs, mowing the lawn, taking care of his nephew's baby, and performing "odd jobs." (Tr. 163, 230).

It is well-established that "findings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995). "Credibility determinations are peculiarly in the province of the finder of fact" and, as such, will not be disturbed when supported by substantial evidence. Id. Factors to be considered in assessing a claimant's credibility include (1) the individual's daily activities; (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; (3) factors that precipitate and aggravate the symptoms; (4) the type, dosage, effectiveness, and side effects of

any medication the individual takes or has taken to alleviate pain or other symptoms; (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. Soc. Sec. R. 96-7p; 1996 WL 374186, 3.

In this case, the ALJ accurately assessed Claimant's claims of pain and limitations in light of the medical record available to him. The ALJ offered ample evidence of inconsistencies in the medical record and Claimant's assertions of pain and limitation. This Court finds no deficiencies in his analysis which would warrant reversal.

### Conclusion

The decision of the Commissioner is supported by substantial evidence and the correct legal standards were applied. Therefore, the Magistrate Judge recommends for the above and foregoing reasons, the ruling of the Commissioner of Social Security Administration should be **AFFIRMED**. The parties are herewith given fourteen (14) days from the date of the service of these Report and

Recommendation to file with the Clerk of the court any objections, with supporting brief. Failure to object to the Report and Recommendation within fourteen (14) days will preclude appellate review of this decision by the District Court based on such findings.

DATED this 29th day of August, 2011.

KIMBERLY E. WEST
UNITED STATES MAGISTRATE JUDGE